# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Cornell G. Edwards, Sr., | : | Case No. 1:04CV1023 |
| | : | |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | |
| Kennametal, Inc., | : | |
| | : | **MEMORANDUM OPINION** |
| Defendant | : | |

Currently pending is the motion of defendant Kennametal, Inc. ("Kennametal") seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

Plaintiff Cornell G. Edwards, Sr. initiated the instant action on April 20, 2004 in Ashtabula County Common Pleas Court, and the case was removed to this federal court on May 25, 2004 based upon diversity of citizenship.

Plaintiff, an employee with Kennametal, alleged in his first cause of action that his discharge from employment amounted to age discrimination in violation of Ohio Revised Code Sections 4112.02 and

---

[1]The parties have also filed motions to strike affidavit testimony offered in support of their positions on summary judgment, asserting that the testimony is not based on personal knowledge, is opinion testimony of lay witnesses, or is hearsay.  For purposes of ruling on the instant motion for summary judgment those motions to strike are denied, but to the extent that the affidavit testimony ran afoul of the Federal Rules of Evidence it was disregarded or given little weight.

4112.14.[2]  In his second cause of action plaintiff claimed that his discharge violated a public policy of the State of Ohio.  Plaintiff's third claim alleged that his discharge amounted to a breach of Kennametal's duty of good faith and fair dealing.

Plaintiff began his employment with Kennametal on May 6, 1968 as a production employee, and continued his employment, with the exception of a brief production-related layoff, until his termination on October 21, 2003.  He  was employed as a top and bottom grinder in the Kenloc MSD Department, which required him to grind the  top and bottom surfaces of small (½ inch wide) carbide cutting tools to insure parallel, flat surfaces and accurate thickness of each tool.  In order to perform this job, the grinder would adjust the diamond grit grinding wheel in a grinding machine in order to attain the proper height and thickness before feeding the cutting tools into the machine.  Plaintiff's performance of his duties as a top and bottom grinder is not disputed.

Plaintiff's work  problems, however, involved his treatment of co-workers, particularly Mr. Joe Budai, a top and bottom grinder on the third shift of the Kenloc MSD Department.  Mr. Budai, who weighed more than 300 pounds, repeatedly claimed that plaintiff made offensive gestures and remarks about his size, weight and eating habits.

In late 2001, Ms. Margaret Timko, Supervisor of the third shift Kenloc MSD department, overheard plaintiff tell a number of his co-workers that Mr. Budai must not have been at work because he had eaten a three pound roast.  That statement caused Ms. Timko to meet with plaintiff on November 8, 2001, during which she told him what she had overheard and informed him that such a comment against

---

[2]In a motion to elect filed on April 28, 2005, plaintiff has elected to pursue the remedy provided in Ohio Revised Code Section 4112.02, and to dismiss his claims under Section 4112.14.  That motion having been unopposed, it is hereby granted and plaintiff's claims under Section 4112.14 are dismissed.

2

a co-worker violated Kennametal's policy against co-worker harassment.  She also provided him with a copy of the policy.

Ms. Timko received an email on September 14, 2002 from second shift Kenloc MSD Department Supervisor Sue Roland informing her that the plaintiff had screamed at co-worker Linda Mansfield, claiming that she had caused problems with the grinding machine.  Ms. Roland  requested that Ms. Timko explain to plaintiff that it was Ms. Roland who had mistakenly instructed Ms. Mansfield to alter the machine and that she educate plaintiff as to the appropriate manner in which to convey his displeasure in the future. Within days of her receipt of the email from Ms. Roland Ms. Timko had such a meeting with plaintiff.

In early to mid November of 2002 Ms. Timko met with Kenloc MSD Department Manager Paul Korst, during which he stated that Ms. Mansfield had complained to him that the plaintiff was disparaging her work performance in discussions with other employees.  Mr. Korst asked Ms. Timko to meet with plaintiff again to counsel him regarding his behavior toward Ms. Mansfield, which she did on November 18, 2002.  Ms. Timko provided plaintiff with a copy of Kennametal's Harassment Policy Statement, warned him that his disparaging comments about Ms. Mansfield to other employees would not be tolerated, instructed him to direct frustrations with co-workers to his supervisor, and informed him that further disparaging comments directed toward Ms. Mansfield would warrant discipline up to and including termination.

In January of 2003, less than two months after plaintiff had been warned that harassment towards co-workers would not be tolerated by Kennametal and could result in his termination, Mr. Budai informed Ms. Timko that the plaintiff was regularly mocking the way he walked by changing his normal gait to an exaggerated, odd walk while changing his shoulders from a relaxed state and his arms from their position

at his sides to one in which he would tense his shoulders, and raise his arms so that they were extended at an angle away from his body with hands facing the floor.  Plaintiff would also bend at the knees with his feet spread wide apart and would walk in a staggered or wobbling manner.  The walk, dubbed by the defendant as the "exaggerated walk," mocked the manner in which Mr. Budai walked; his arms could not fall naturally to his sides due to his large girth.  Mr. Budai also noted that the restroom near the Kenloc MSD work area had a stall door in which the words "Fat Pig" were scratched onto it.

Ms. Timko and Mr. Korst met with plaintiff on January 24, 2003, confronted him with Mr. Budai's complaints, gave him an opportunity to respond, and warned him that such behavior could lead to his termination.  Plaintiff denied the allegations, and refused to sign the memorandum prepared by Mr. Korst documenting the meeting.

On March 27, 2003 plaintiff attended a meeting in which Ms. Karen Jones, Kennametal's Human Resources Manager, discussed and issued to each employee a newly drafted version of Kennametal's Employee Handbook, and suggested that the employees thoroughly read the handbook.  Harassment is defined therein as:

> [A]ny action that creates an offensive working environment, including insulting, intimidating or discourteous conduct as well as derogatory jokes or comments relating to age, disability, marital status, national origin, race, religion, sexual preference or sex.

Within ten days of his receipt of the Employee Handbook Mr. Budai informed Ms. Timko that plaintiff's behavior had continued, at which point Ms. Timko requested that Ms. Jones intervene and investigate the claims against Mr. Budai, which she did.  After doing so, Ms. Jones told Ms. Timko that Mr. Budai and his co-workers had observed plaintiff engage in conduct which included: (1) commenting to Mr.

4

Budai and other co-workers about Mr. Budai's size, weight and/or eating habits; (2) repeatedly yelling out "Code Blue," which in that context meant that there was a gas leak, whenever Mr. Budai would enter or leave a restroom; (3) stating to a co-worker as they walked behind Mr. Budai on their way to a meeting and as they approached a stairway, "I guess we better use the other stairs;" (4) telling other co-workers that Mr. Budai "hogged" all the "gravy" work; (5) flapping his arms like a chicken whenever Mr. Budai walked past him; and (6) repeatedly engaging in the "exaggerated walk."

During Ms. Jones' investigation, she was informed by Ms. Debra Gruskiewicz that plaintiff repeatedly referred to Mr. Budai as "Joe Browneye" or "Browneye," which she understood to mean "asshole." When Mr. Budai was absent from work, plaintiff would mock him by saying that he was absent because he was out killing a calf in order to eat it. She also stated that at a plant-wide meeting while Mr. Budai attempted to sit down in one of the chairs plaintiff was pointing to him, laughing and openly remarking to other co-workers that Mr. Budai could not fit into the chair.[3]

Ms. Jones met with Mr. Korst to discuss what she learned during her investigation, and they in turn met with Mr. John Caverno, Kennametal's Regional Human Resource Manager, and with Mr. Gary Martineck, Kennametal's Orwell Plant Manger, during which Ms. Jones and Mr. Korst were granted authority to suspend plaintiff for two days unless he was able to provide sufficient evidence to rebut the allegations against him.

Ms. Jones, Ms. Timko and Mr. Korst met with plaintiff on April 15, 2003, told him what they had learned during the investigation and gave plaintiff the opportunity to respond to the allegations against him,

---

[3]Ms. Gruskiewicz has subsequently stated that she observed plaintiff engaging in the exaggerated walk on between twenty and thirty occasions.

which he did by denying that he had committed the acts complained of.  During that meeting plaintiff was informed that he was being assessed a two-day disciplinary suspension to be served on April 16th and 17th.  He was also provided with a letter confirming his suspension.

On June 2, 2003 Mr. Budai again complained to Ms. Timko that plaintiff was engaging in the "exaggerated walk."  Another such complaint was directed to Ms. Timko by Mr. Budai on June 25, 2003, after plaintiff engaged in the exaggerated walk three times that evening.  Ms. Timko in turn notified Ms. Jones and Mr. Korst that the problem with plaintiff was ongoing, and they discussed the problem with Messrs. Martineck and Caverno.  It was decided that a meeting with plaintiff should occur, during which he would be advised that there had been ongoing complaints and that he had the opportunity to provide rebuttal evidence and witnesses, but that if he was unable to do so he would be given a final written warning.

On June 26, 2003 Ms. Timko, Ms. Jones, and Mr. Korst met with plaintiff once again, and told him they had been informed that he  had continued to engage in the exaggerated walk and that Mr. Budai had been upset by his actions, whereupon plaintiff denied the claim and stated that any difference in his gait stemmed from leg and knee problems he was having.  Mr. Korst told plaintiff that in light of his past problems with harassing actions they were reluctant to accept his word over that of Mr. Budai, and that any further complaints could result in his termination.  In addition to this verbal warning, Mr. Korst provided plaintiff with a final written warning on this matter,  and advised plaintiff that any retaliatory actions on his part against Mr. Budai would also result in his termination, at which point plaintiff had the audacity to inquire whether retaliatory actions taken off company property would also result in his termination.

Two months later, on August 29, 2003, Mr. Budai informed Ms. Timko that plaintiff had been

6

flapping his arms like a chicken while looking at him, after which Ms. Timko advised Ms. Jones that plaintiff's behavior had resumed.

Shortly thereafter, on September 4, 2003, Mr. Budai complained to Ms. Timko that plaintiff had engaged in the exaggerated walk.  Ms. Jones and Messrs. Korst and Caverno were informed of the complaint.

After each of Mr. Budai's complaints, Ms. Timko was instructed to try to observe plaintiff engaging in the acts about which Mr. Budai had complained.

Ms. Jones also conferred with Mr. Martineck as to how to respond to Mr. Budai's most recent complaints, and was instructed to attempt to obtain further corroboration of plaintiff's actions prior to terminating him.

On September 23, 2003 Mr. Budai again complained that plaintiff was flapping his arms like a chicken while looking at him and then proceeded to engage in the exaggerated walk.  Ms. Jones and Mr. Korst met on that day, and agreed to hold off on terminating plaintiff until corroboration could be secured.

On October 15, 2003 Mr. Budai and a co-worker,  Mr. Rick Bowser, complained to Ms. Timko that while they were conversing on two occasions during their shift  plaintiff looked at Mr. Bowser and placed his middle finger along side of his nose.  The two men also observed plaintiff engage in the exaggerated walk after the second middle finger incident.

Ms. Jones, and Messrs. Korst, Martineck and Caverno met to discuss the latest allegations against plaintiff, and agreed that as long as Mr. Bowser corroborated the latest incident plaintiff would be terminated.  Ms. Jones and Mr. Korst were granted authority to interview Mr. Bowser and, depending on his responses, to terminate plaintiff.

7

Ms. Jones met with Mr. Bowser on October 21, 2003 and he not only corroborated Mr. Budai's version of the October 15th incident, but he also stated that he had observed the exaggerated walk three to four weeks earlier and that he could not have mistaken the walk for plaintiff limping or accommodating a leg problem.

On October 21, 2003, at the end of his shift, plaintiff was advised that he was terminated, was given a copy of a termination letter signed by Mr. Korst, and was escorted out of the facility.

In its motion for summary judgment Kennemetal argues: (1) that plaintiff's cause of action under Ohio Revised Code Section 4112.02(N) is subject to dismissal as having been untimely filed; (2) that untimeliness aside, plaintiff has failed to satisfy the requirements of a prima facie case of age discrimination as there is no evidence that the termination was premised upon anything other than the legitimate, non-discriminatory reason articulated by defendant, particularly since there is no evidence that he was replaced by a person of substantially younger age; (3) that there is no evidence that his termination was against Ohio public policy or that Kennemetal lacked an overriding legitimate business reason for his termination; and (4) that Ohio fails to recognize a cause of action for breach of the implied duty of good faith and fair dealing.

The disposition of a motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides for the granting of such motion only where, "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is the court's function under such a motion to determine whether a genuine issue of material fact exists, as opposed to endeavoring to resolve any such factual issues. Tee-Pak, Inc. v. St. Regis Paper Co.,

8

491 F.2d 1193 (6th Cir. 1974); 6 Moore's Federal Practice 56.15 [1.-0].

It is the initial burden of the moving party to demonstrate the absence of a genuine issue of material fact as to an essential element of the claims brought by the non-moving party.  Curto v. Harper Woods, 954 F.2d 1237, 1241 (6th Cir. 1992);  Wilson v. Zanesville, 954 F.2d 349, 350-351 (6th Cir. 1992);  Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989).

In Street v. J.C. Bradford & Co., supra, the Sixth Circuit Court of Appeals reviewed three then recent decisions of the United States Supreme Court addressing summary judgment practice, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).[4]  The court summarized those cases as standing for a number of new principles in summary judgment practice, including the fact that cases involving considerations of state of mind issues (such as discriminatory action) are not automatically inappropriate for summary judgment; that a federal directed verdict standard ("whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law") should be applied to summary judgment motions; that a non-moving party must provide "more than a mere scintilla of evidence" to avoid summary judgment;  that the substantive law applicable to the cause of action will govern the materiality of the issues of fact; that the court has no duty to search the record to determine the existence of genuine issues of material fact; and perhaps most significant, that a trial court has more discretion than it would have in the past in weighing the evidence offered by the non-moving party, considered in light of the whole record, to determine whether

_____

[4]After the passage of a number of years the court's reference to those rulings as representing a "new era" of "dramatic change" may no longer hold true, but the characterization of their import as to motions for summary judgment being viewed with "more favorable regard" certainly remains true.

that party's evidence does "more than simply show that there is some metaphysical doubt as to the material facts" or whether it demonstrates that the non-moving party's claims are "implausible". Id. at 1479-1480 (Footnotes and citations omitted.)

Under the law of Ohio, which is to be applied in this diversity action, a cause of action for age discrimination brought pursuant to Ohio Revised Code Section 4112 must be filed within 180 days of the alleged infringement of a right. Oker v. Ameritech Corp., 89 Ohio St.3d 223, 224, 729 N.E.2d 1177, 1179 (2000), citing Bellican v. Bicron Corp., 69 Ohio St.3d 517, 634 N.E.2d 608 (1994). The time "begins to run on the date of the employee-plaintiff's termination from the defendant-employer." Id. at 224.

Pursuant to Rule 6(A) of the Ohio Rules of Civil Procedure:

> In computing any period of time prescribed or allowed by these rules,...or by any applicable statute, the date of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday....

Applying the foregoing to the present case, plaintiff was informed on October 21, 2003 that he was terminated effective the following day. Even if the effective date of the termination was to be the starting point in calculating the limitations period it began to run no later than October 23rd and continued through the remainder of October (9 days), November (30 days), December (31 days), January (31 days), February (29 days, as it was a leap year), March (31 days) and April (19 days). Therefore, to be timely a complaint should have been filed by Monday, April 19, 2004. However, plaintiff did not file his complaint until the following day, rendering it one day out of rule. As a consequence, the instant complaint is subject to dismissal as having been untimely filed.

Untimeliness aside,  if this Court was to consider the merits of plaintiff's claims for relief they would nonetheless fail.

In addressing plaintiff's state law claims of age discrimination brought under O.R.C. Section 4112, this Court may rely on cases interpreting the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  Williams v. General Electric, 269 F.Supp.2d 958, 966 (S.Dist. Ohio 2003), citing City of Columbus Civil Service Commission v. McGlone, 82 Ohio St.3d 569, 697 N.E.2d 204, 206-207 (1996) and Cochran v. Columbia Gas of Ohio, Inc., 138 Ohio App.3d 888, 742 N.E.2d 734, 738 (Ct. App. Franklin County 2000).

The seminal case on employment discrimination is McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), wherein the United States Supreme Court delineated a four part formula by which a plaintiff can establish a prima facie case by showing that he/she 1) is a member of a protected class, 2) was qualified for the position, 3) was discharged, and 4) that his/her position was filled by a non-member of the protected class.  Id. at 802.  This test is also used by the Ohio courts when faced with alleged violations of Ohio's anti-discrimination statutes.  Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992).

Strict adherence to the McDonnell Douglas formula is not required when there is direct evidence of discriminatory intent on the part of the defendant.  Shah v. General Elec. Co., 816 F.2d 264 (6th Cir. 1987) (plaintiff established prima facie case of discrimination even though she was not replaced after her discharge where she presented other evidence of discriminatory motive); Mills v. Ford Motor Co., 800 F.2d 635, 639 (6th Cir. 1986) ("All the plaintiff must establish at the prima facie stage is that her discharge raised an inference of discrimination"); Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986) (female plaintiff established prima facie case when she showed that she was discharged for engaging in an affair with a man

11

in the office who was not likewise discharged).

There being no direct evidence of discrimination in the present case, in order to succeed there would need to be proof from which a factfinder could infer an invidious intent to discriminate with regard to plaintiff's termination.

Once a prima facie showing of discrimination is made, there is a rebuttable presumption that the employer has engaged in impermissible age discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). At that point the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802; Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1214 (6th Cir. 1996).

Stated differently, that presumption may be rebutted by the production of evidence that "the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1982 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, supra at 254). Once the employer has met the foregoing burden of production the presumption of discriminatory animus is no longer in effect.

Having negated the presumption of discriminatory animus, the factfinder is back to square one and must determine whether the termination of the employee was motivated by discriminatory animus, taking into consideration all evidence of record, including any evidence indicating that the reason articulated by the employer for the termination was pretextual. The plaintiff may accomplish this either by showing that the proffered reason is unworthy of belief, or that the true reason for the plaintiff's rejection, notwithstanding the proffered reason, was of a discriminatory nature. Goostree v. Tennessee, 796 F.2d 854 (6th Cir. 1986), cert. denied, 480 U.S. 918 (1987).

12

"Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1982 (6th Cir. 1994) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).  In order to challenge the credibility of an employer's explanation, the plaintiff must show by a preponderance of the evidence: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment action; or (3) the proffered reasons were insufficient to motivate the adverse employment action.  See Manzer, 29 F.3d at 1084 (quoting McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)).

E.E.O.C. v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 834 (6th Cir. 1997).  The plaintiff always retains

the ultimate burden of persuasion.  Ibid, citing Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987).

When the foregoing issues are raised upon motion for summary judgment the following applies:

In the context of a summary judgment proceeding, [St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)] requires that, once the employer has advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on age..." Direct or indirect evidence of discriminatory motive may do but 'the evidence as a whole...must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.'"...Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer.

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993) (Citations and footnotes omitted.)

Accord, Manzer v. Diamond Shamrock Chemicals Co., supra at 1083, n.3.

Although disbelief of the employer's proffered reason for discharge together with the facts making

13

up the prima facie case may suffice to show discrimination, "nothing in law would permit [a court] to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 514-15 (1993).

There is no dispute that as regards his termination the plaintiff can satisfy the first three elements of the McDonnell Douglas formula as he is a member of the protected class (56 years old at the time of his termination),  there is no challenge to his qualifications for the position he held and he clearly was discharged.  The dispute lies with the fourth element, which in this case requires the plaintiff to demonstrate that Kennemetal has failed to treat age neutrally upon his termination.

As support for his contention that Kennemetal terminated him based upon his age plaintiff offers only unsupported, self-serving statements that: (1) at the time of his termination he was the highest paid non-management employee, so that his termination resulted in a significant cost savings to Kennemetal; (2) that he was replaced by employees from a temporary agency, who were  less than 40 years old, earned approximately $6 to $7 less per hour than plaintiff, and did not receive benefits;[5] and (3) that the accusations that plaintiff harassed a co-worker were "spurious."

On the other hand, the defendant has offered affidavits from  Mr. Korst and Ms. Timko,  who stated that after his termination plaintiff was not permanently replaced but, rather, the three other permanent

---

[5]Plaintiff attempts to support his conclusory statements with an "Errata: Offer of Proof" in which he claims to have served a subpoena on Adecco, Inc., a temporary agency, which he believes has records of Kennemetal hiring temporary employees under age 40 who were being paid between $6 and $7 an hour without benefits.  According to plaintiff there has been no response to the subpoena.  The proper recourse for non-compliance with a subpoena would not be by way of this "Errata: Offer of Proof."  Further adding to the general speculative nature of this information, there is no way for plaintiff to know whether those employees, if such there were, were performing janitorial work as opposed to skilled work on grinding machinery.

14

top and bottom grinders on the third shift at Kenloc MSD were used without adding a fourth grinder.  Mr. Korst and Ms. Timko further averred that there were occasions on which employees from other shifts were temporarily assigned to fill in on plaintiff's former shift.

With regard to the plaintiff's claims that the harassment accusations were "spurious," Kennemetal offers affidavits from  Mr. Budai and his co-workers, Ms. Gruskiewicz and Ms. Kirby, who corroborated plaintiff's offensive speech and conduct toward Mr. Budai, including the exaggerated walk.  The extent of the investigation conducted by members of Kennametal's management, as well as the information gleaned therefrom, was also detailed by the affidavits of Mr. Korst, Ms. Timko, Mr. Caverno, Ms. Jones, and Mr. Martineck.

After reviewing plaintiff's unsupported conclusions and the evidence offered by defendant, it is the opinion of this Court that there is no genuine issue of material fact as to the fourth element of a prima facie case of age discrimination.

In light of the plaintiff's failure to satisfy the fourth element of a prima facie case of age discrimination pertaining to his termination, summary judgment is warranted.

Even if this Court was to find that plaintiff had met his burden of establishing a prima facie case, the end result would not differ.

The defendant has met its burden of producing evidence of a non-discriminatory reason for terminating plaintiff by way of the evidence previously outlined herein of harassment of co-worker Joe Budai and the investigation conducted by Kennemetal.

The defendant having met its burden of producing evidence of a non-discriminatory reason for terminating plaintiff, the plaintiff must prove by a preponderance of the evidence that the defendant's reason

for terminating him is a pretext for age discrimination.  In order to do so, he must establish by a preponderance of the evidence that the proffered reason, in this case his ongoing harassment of his co-worker, had no basis in fact and did not actually motivate the decision to terminate plaintiff.

Plaintiff argues that he made such a showing by offering the following evidence: (1) several copies of Kennametal's policies against harassment of co-workers, arguing that he cannot tell which one applies; (2) copies of email communications between members of Kennametal's management team in which they discuss efforts to observe first-hand plaintiff's harassment of his co-workers; and (3) affidavits of plaintiff, Ms. Sue Pfleger, who stated that she had not seen any instances of harassment by plaintiff, and Dr. Samuel Daisley, who stated that plaintiff suffered an injury to his left leg from a motorcycle accident and that due to diabetes he experiences "flair ups" causing the leg to swell and be painful.

The fact that there were several versions of Kennametal's policy against harassment of co-workers only suggests that plaintiff should have been well aware that he should not have engaged in the behavior outlined  herein, and does not support plaintiff's claim that the reason offered by defendant for terminating plaintiff was pretextual.

Neither do the email communications between members of Kennametal's management team in which they discuss efforts to observe first-hand plaintiff's harassment of his co-workers.  Instead, this Court considers such evidence as reflecting the team's commendable effort to corroborate the charges with first-hand observation prior to terminating the accused employee.

The affidavit of Ms. Pfleger merely establishes that she did not observe any harassment by plaintiff upon Mr. Budai, not that there was no such harassment.

The affidavit of Dr. Daisley simply shows that at times plaintiff had a sore, swollen left leg, but there

16

was no evidence that his leg problem had flared up on the dates when he engaged in the exaggerated walk to mock Mr. Budai.  This leg problem also had no bearing on harassing conduct other than the exaggerated walk, of which there was ample evidence.

In light of the fact that plaintiff has also failed to designate specific facts to demonstrate that the defendant's reason for terminating him is a pretext for age discrimination, summary judgment on his age discrimination claim is warranted.

Plaintiff has also included a claim for relief for wrongful discharge in violation of Ohio public policy, presumably that set forth in O.R.C. §4112.

Kennemetal argues that summary judgment should be granted on this claim for relief for each of several reasons: (1) plaintiff cannot establish that terminating him from employment jeopardized a clear public policy as he had a statutory remedy available to him; (2) plaintiff cannot establish that his termination was motivated by reasons that violated such public policy or that defendant lacked a legitimate business reason for the termination; and (3) a wrongful discharge in violation of public policy claim based upon an alleged violation of O.R.C. §4112 must be dismissed if summary judgment is granted on the underlying claim.

Under Ohio law employment decisions may not violate public policy even if they involve an at-will employee. Mischer v. Erie Metropolitan Housing Authority, 345 F.Supp.2d 827, 831 (N.D.Ohio 2004), citing Painter v. Graley, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994).  An exception exists to the longstanding employment-at-will doctrine provided that the public policy alleged to have been contravened rises to the level of a violation of a statute, Greeley v. Miami Valley Maintenance Contractors, Inc., 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), or of the state or federal constitution, administrative rules and

17

regulations, or the common law, Bicudo v. Lexford Properties, Inc., 157 Ohio App.3d 509, 524, 812 N.E.2d 315, 327 (Ct.App. Mahoning County 2004), citing Painter v. Graley, supra at paragraphs two and three of the syllabus. A claim for relief for such a violation of public policy is known as "wrongful discharge in violation of public policy" or a "Greeley claim." Bicudo v. Lexford Properties, Inc., 157 Ohio App.3d 509, 812 N.E.2d 315, 327 (Ct.App. Mahoning County 2004).

In Painter v. Graley, supra at 384, the Ohio Supreme Court adopted a four element test to prove a cause of action for wrongful discharge in violation of public policy:

1. That clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the clarity element);

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element);

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

When the Greeley claim is premised upon a statute that already provides an adequate remedy, the jeopardy element cannot be satisfied, according to the Ohio Supreme Court decision in Wiles v. Medina Auto Parts, 96 Ohio St.3d 240, 244, 773 N.E.2d 526, 531 (2002), which stated in pertinent part, "Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." In Wiles, the adequate statutory remedy was the Family and Medical Leave Act (FMLA), 29 U.S.C. §§2601, et seq.

18

Courts have also held that a plaintiff may not bring a claim for wrongful discharge in violation of public policy when that claim is premised solely upon a violation of O.R.C. §4112.02.  Satterwhite v. Faurecia Exhaust Systems, Inc., ___ F.Supp.2d ___, 2005 U.S.Dist. LEXIS 10282 (S.Dist. Ohio May 31, 2005); Jakischa v. Central Parcel Express, 106 Fed.Appx. 436, 2004 WL 1987131 (6th Cir. 2004); Mischer v. Erie Metropolitan Housing Authority, supra at 832; Lewis v. Fairview Hospital, 156 Ohio App.3d 387, 806 N.E.2d 185 (Ct.App. Cuyahoga County 2004); Barlowe v. AAAA International Driving, Inc., unreported, Case No. 19794, 2003 Ohio App. LEXIS 5097 (Ct. App. Montgomery County 2003); Palesh v. Rockwell International Corp., unreported, Case No. 79725, 2002 Ohio App. LEXIS 123 (Ct. App. Cuyahoga County 2002); Berge v. Columbus Community Cable Access, 136 Ohio App.3d 281, 736 N.E.2d 517 (Ct. App. Franklin County 1999).

Other courts have held that a claim for wrongful discharge in violation of public policy premised solely upon a violation of O.R.C. §4112.02 may be brought as a separate claim but cannot succeed if the plaintiff cannot establish a violation of O.R.C. §4112.02. Vitatoe v. Lawrence Industries, Inc., 153 Ohio App.3d 609, 795 N.E.2d 125 (Ct.App. Cuyahoga County 2003); Pflanz v. Cincinnati, 149 Ohio App.3d 743, 778 N.E.2d  1073 (Ct.App. Hamilton County 2002); Ferraro v. B.F. Goodrich Co., 149 Ohio App.3d 301, 777 N.E.2d 282 (Ct.App. Lorain County 2002); and Cochran v. Columbia Gas of Ohio, Inc., 138 Ohio App.3d 888, 742 N.E.2d 734 (Ct.App. Franklin County 2000).

In the present case, whether this Court considers the claim for wrongful discharge in violation of public policy premised solely upon a violation of O.R.C. §4112.02 as a tort claim separate from the discrimination claim or declines to do so becomes a distinction without a difference, in light of this Court's determination that there is no genuine issue of material fact as regards the fourth element of a prima facie

19

claim of discrimination and as regards the issue of pretext. Having found no discrimination, both causes of action would fail; absent discrimination there would be no contravention of public policy.

It follows that defendant's motion for summary judgment on plaintiff's wrongful discharge claim is warranted.

Kennemetal also seeks summary judgment on plaintiff's third cause of action for breach of the implied duty of good faith and fair dealing, arguing that there is no such obligation as between an employer and employee in an at-will employment relationship.

Plaintiff having failed to address this issue in briefing, the issue could be considered as abandoned. That aside, however, this Court agrees with defendant that under Ohio law such a cause of action does not exist.

> Ohio does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the case of a wrongful discharge of an at-will employee. Mers v. Dispatch Printing Co., supra, 19 Ohio St.3d at 105, 19 OBR at 265-266, 483 N.E.2d at 154-155; Kuhn v. St. John & West Shore Hosp. (1989), 50 Ohio App.3d 23, 552 N.E.2d 240.

Borowski v. State Chemical Manufacturing Co., 97 Ohio App.3d 635, 644, 647 N.E.2d 230, 236 (Ct.App. Cuyahoga County 1994). Consequently, this claim for relief is subject to dismissal.

In light of all the foregoing, this Court is of the opinion that there are no genuine issues of material fact on the claims raised by plaintiff and that defendant is entitled to judgment as a matter of law.[6]

---

[6]Having so decided, defendant's motion to strike the plaintiff's brief in opposition to summary judgment for failure to file it within the time set out by this Court is rendered moot and is, therefore, denied.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:    June 21, 2005